Simco Sales Service of Pennsylvania, Inc., *v.* Brackin et al., Appellants.

Argued April 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

Judgment reversed.

*Philip A. Brégy,* with him *John E. Forsythe, James M. Brittain* and *Frank A. Moorshead,* for appellants.

*Robert W. Beatty,* with him *Herman Hurowitz* and *Robert B. Greer,* for appellee.

OPINION BY MR. JUSTICE DREW, May 11, 1942:

This is an action of mandamus brought by plaintiff, Simco Sales Service of Pennsylvania, a corporation engaged in the retail sale of ice cream, against defendants, Board of Health of the Borough of Lansdowne and its members, to compel the issuance of a license to plaintiff to sell ice cream in the Borough. The appeal is from the decision of the learned court below sustaining plaintiff's demurrer to defendants' return.

There is no dispute as to the facts, but only as to the legal conclusions to be drawn from them. The one and only essential fact of the case, as is shown in the pleadings, is that plaintiff applied for a license to sell in the Borough of Lansdowne, ice cream manufactured solely by Abbotts Dairies, Inc., in wrappers which do not have the name of Abbotts Dairies, Inc., inscribed thereon, but which instead are labelled "M'F'D by Sunnyridge Dairies, American & Gaskill Street, Philadelphia, Pa." As set forth in the return to the writ, defendants take the position that to issue a license in these circumstances would result in three separate and distinct violations of the Board of Health's regulations adopted July 14, 1941, which (1) Prohibit false labels and require the name and address of the manufacturer to appear on all ice cream wrappers, (2) Provide that no license shall issue until the Board is satisfied that all state laws and regulations have been complied with and (3) Provide that no license shall issue until the Board is satisfied that all permits and licenses required under state laws and regulations have been obtained. The plaintiff contends that these regulations have been complied with.

Specifically, the narrow question is whether or not the label "M'F'D by Sunnyridge Dairies, American and Gaskill Street, Philadelphia, Pa." on the wrappers states the name and address of the manufacturer of the ice cream. The plaintiff admits that the ice cream, which it proposes to sell, is manufactured, packed and sold by Abbotts Dairies, Inc., and that the name "Sunnyridge Dairies" is not the name of a corporation or of any individual person doing business under a fictitious name. The evidence discloses that the name has been "assumed" or "adopted" by Abbotts Dairies, Inc., as a trade name in the sale of the particular ice cream which is proposed to be retailed by plaintiff in the Borough.

It is clear that the name "Sunnyridge Dairies" does not name the manufacturer of the ice cream. The use of this fictitious name is undoubtedly for the purpose of preventing the public from knowing the name of the real manufacturer, which admittedly is Abbotts Dairies, Inc. This is the very thing which the regulations of the Board are intended to prevent. If such a practice were permitted, it would defeat the purpose of the regulation, which is to prevent fraud or deception in the sale, by giving notice to purchasers of the identity of the manufacturer. Certainly this cannot be accomplished by a label or marker which conceals the real name of the manufacturer, and gives in its place an assumed, fictitious name.

The contention that this regulation is not a valid health measure is without merit. There is no doubt that the manufacture and sale of ice cream or other frozen milk products may be regulated within reasonable limits for the purpose of prevention of disease or deception of the public and the securing of a wholesome product: *Commonwealth v. Crowl*, 245 Pa. 554; *Hutchinson Ice Cream Co. v. Iowa*, 242 U. S. 153. Nor is there any doubt concerning the power of the Borough of Lansdowne to promulgate such regulations, for this power is granted to it under Section 6 of the Act of June 12, 1913, P. L. 471, as amended. Further, plain-

tiff, by bringing this action to compel the issuance of a license to it, depends on the validity of the ordinance: *Hill v. Fetherolf*, 236 Pa. 70. Relying upon the ordinance for the right asserted and the duty asked to be enforced, plaintiff must either show compliance with the rules and regulations embodied therein or show that they impose a condition which may not lawfully be imposed.

It cannot be seriously argued that plaintiff has complied with the regulation in question. Although it is a fact that Sunnyridge Dairies has been licensed under the Act of May 31, 1933, P. L. 1116 (No. 274), as amended by the Act of June 5, 1937, P. L. 1672, as an ice cream plant operator by the Department of Agriculture, it is equally true that the manufacturer of the ice cream proposed to be sold is Abbotts Dairies, Inc., for that is admitted as a fact. A label on the wrapper or container of ice cream which states that the product is "M'F'D by Sunnyridge Dairies" is obviously not a compliance with a regulation of a board of health requiring the wrapper or container to bear the name of the manufacturer, when such ice cream is admittedly manufactured by Abbotts Dairies, Inc.

The Act of 1933, supra, entitled "AN ACT For the protection of the public health and to prevent fraud and deception in the manufacture . . . of ice cream . . .", prohibits the sale of any ice cream which is falsely labelled as to the name and address of the manufacturer or which fails to disclose the name and address of the manufacturer. Plaintiff contends that this provision has been complied with and points to the license granted to "Sunnyridge Dairies" by the Department of Agriculture under this act. We do not concede that the action of the Department of Agriculture in granting the license was proper under the circumstances, this for the reason that the Act of 1933, supra, and its amendment of 1937, supra, provide that it shall be unlawful for any person or corporation to sell any ice cream which is falsely labelled or branded as to the

name of the manufacturer thereof; or to misrepresent in any way, the place or manufacturer thereof. This makes it appear that the issue of the license to the plaintiff by the Department of Agriculture was a mistake, being in violation of the Act of 1933. In addition, Section 7 of the Act of July 2, 1935, P. L. 589, provides that no person shall sell milk products (which include ice cream and other similar frozen products by definition of the statute) that do not bear prominently the name and address of the manufacturer, and the name and location of the milk plant in which the products were processed or manufactured.

The real question for determination is, therefore, whether the regulation is a reasonable and valid health measure. Food and health regulations, as such, are entitled to the presumption of constitutionality which courts apply to exercises of the police power in general: *Commonwealth v. Crowl*, supra; *Pacific States Co. v. White*, 296 U. S. 176. Therefore, unless the regulation in question is arbitrary or capricious and does not bear a reasonable relation to the preservation of public health or the protection of the public from imposition, it must be upheld: *Carolene Products Co. v. Harter*, 329 Pa. 49; *Price v. Illinois*, 238 U. S. 446. It should be noted that the regulation in question is not a novel one. The rule is a common device to insure wholesomeness of a given product. It is not peculiar to the Board of Health of the Borough of Lansdowne. Substantially similar provisions appear in Section 4 of the Act of 1933, supra, as amended by the Act of 1937, supra, and in Section 7 of the Act of 1935, supra. Nor is the requirement of recent origin, for it appeared in the statutes at least as early as 1909 in Section 5 of the Act of March 24, 1909, P. L. 63. No case questioning the validity of such a requirement in this Commonwealth has been brought to our attention, nor have we been able to discover any, with the single exception of *Simco Sales Service v. Landis*, 57 Montg. Co. L. R. 331, 42 D. & C. 139, where a similar regulation was upheld as a reasonable and valid

health measure. The reasons for such a regulation are apparent. It is an impossibility to have every package of ice cream inspected before it is sold. By having this type of regulation the task of discovering the origin of defective products is made easier. Also, it tends to make a manufacturer more careful in guarding against contamination if it is known to him that his name must appear on each product he offers to the public at large for consumption. It is a preventive measure designed to insure the wholesomeness of ice cream, and its purpose can only be accomplished by requiring that notice be given to the public, or purchasers, of the identity of the manufacturer. We are of opinion that the regulation adopted by the Board is neither arbitrary nor capricious and that it is a reasonable health measure designed to protect the public. It cannot be said that it is an unjust discrimination or unreasonable restriction to require merchandise to be sold for just what it is, and prevent its sale for something other than what it is. Plaintiff's contention that the license should be issued regardless of the validity of the regulation, inasmuch as the ice cream proposed to be sold would be identical with other ice cream sold by Abbotts Dairies, Inc., is without merit. The reason for the use of the label, "M'F'D by Sunnyridge Dairies", though a business one, is to conceal from the public the name of the manufacturer rather than to disclose it. Were such a practice permitted, there would be nothing to prevent irresponsible persons from engaging in the same type of fraud on the public with most serious consequences apt to follow. There is no compelling reason why a license should be granted to a seller of ice cream whose product is falsely labelled.

Judgment reversed and entered for defendant.