Suzanne L. ADLER, on behalf of herself and all of the stockholders of Williams-McWilliams Industries, Inc., similarly situated, Plaintiff,

v.

W. Edward KLAWANS and Williams-McWilliams Industries, Inc., Defendants.

United States District Court
S. D. New York.

Jan. 29, 1958.

Supplemental Opinion May 19, 1958.

Kaufman, Imberman, Taylor & Kimmel, New York City, Stanley L. Kaufman, New York City, of counsel, for plaintiff.

White & Case, New York City, David Hartfield, Jr., New York City, of counsel, for defendant Klawans.

Bleakley, Platt, Gilchrist & Walker, New York City, for defendant Williams-McWilliams on the motion of Jan. 29, 1958.

Timen & Waters, New York City, for Williams-McWilliams on the decision of May 19, 1958.

RYAN, District Judge.

Both plaintiff and defendants move for summary judgment in this action; the corporate defendant joins plaintiff in seeking relief against the individual defendant.

Plaintiff sues to require defendant Klawans to account and pay over to the corporate defendant all profits realized by him from his purchase and sale of the corporation's common stock. The facts are not in dispute. Klawans admits on these motions that a corporation in which he has an interest sold stock of the corporate defendant (which is listed on the American Stock Exchange) after Klawans became a director of Williams-McWilliams Industries, Inc. It is conceded that the stock was sold at a profit within six months of its purchase. Klawans asserts, however, that he was not a director of the corporate defendant at the time he purchased the stock.

The issue before the Court is a narrow one and requires consideration of Section 16(b) of the Securities and Exchange Act of 1934 [1]. The question to be decided may be stated: Is a director liable to account for and pay over profits on the purchase and sale of stock which was acquired prior to his election as director but sold after he became a director? In other words, must a director be such, both at the time of purchase as well as of sale, to be liable to account under Section 16(b); or is it sufficient if he is not a director when he buys, but is when he sells stock in his corporation.

Defendant Klawans argues that he is not to be held accountable because he was not a director both at the time of purchase *and* sale of the securities. He reaches this conclusion by too narrow a reading of Section 16(b) which would defeat the salutary purpose of Congress in enacting the statute.

The statute is broadly remedial and is designed to prevent any insider, such as a director, from speculating in the corporation's securities by use of inside information. Shaw v. Dreyfus, 2 Cir., 1949, 172 F.2d 140. No case on all fours with this one has been called

---

[1]. The pertinent portion of the statute reads as follows:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. * * * This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C.A. § 78p(b).

to the Court's attention, and the Court's independent research has revealed none. The informed text writer, however, would seem to sustain plaintiff's position. Cf. Loss, Securities Regulation p. 578; Rubin and Feldman, Statutory Inhibitions Upon Unfair Use of Corporate Information by Insiders, 95 U. of Pa.Law Review 468.

From a consideration of the purposes for which the statute was enacted, the Court concludes that plaintiff's view must be sustained. If a director of a corporation could make shortswing profits by selling the corporation's securities within six months of his becoming a director, a loophole would be created defeating the very salutary purpose of Section 16(b). The statute is designed to prevent the use, or likelihood of use, of inside information by a corporate director for personal profit. Here, Klawans admittedly sold the corporation's stock within six months of its purchase, and the sale, at a profit, was made after he became a director. The purposes of the law requiring an accounting and payment of profits "for the purpose of preventing the unfair use of information" obtained by a director "by reason of his relationship to the issuer", would be defeated if it did not apply here.

Defendant Klawans' motion for summary judgment dismissing the complaint is denied. Plaintiff's motion for partial summary judgment is granted with reservation for a trial on the issue of damages to be returned to the corporation.

Settle order on notice.

### Supplemental Opinion

On January 29, 1958 we granted partial summary judgment adjudging defendant liable to account for shortswing profits realized in violation of Sec. 16(b) of the S.E.A. of 1934 and reserved for trial the question of the amount of recoverable profits.

The parties have since stipulated the mathematical accuracy of all possibly relevant transactions thus eliminating all factual issues and leaving for determination only the following questions of law:

1. which of these transactions should be considered in computing recoverable profits;

2. whether dividends are to be included in computing such recoverable profits;

3. when interest, if any, should run.

Defendant maintains that in computing recoverable profits realized during the six-month period contemporaneous losses should be set off thereby reducing these profits from $20,748.36 as computed by plaintiff to $11,784.93.

The wording of Section 16(b) providing for the recovery of "*any*" profit from "*any*" purchase and sale does not support defendant's contention. The purpose of the statute is to permit a plaintiff in these suits to squeeze all possible profits from a defendant, actually and literally, and to do this he may select those transactions of which he complains with such designations as will increase the profits to the greatest possible amount. "The statute does not allow the fiduciary to minimize his profits, any more than to set off his losses against them," Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46, 51; it permits arbitrary matching of purchases and sales to achieve the showing of a maximum profit (Smolowe v. Delendo, D.C., 46 F.Supp. 758, Id., 2 Cir., 1943, 136 F.2d 231, and does not require that the transactions be limited to the identical shares of stock. "This accords with the fungible nature of shares of stock." Gratz v. Claughton, supra. I do not read Stella v. Graham Paige Motors, 2 Cir., 1956, 232 F.2d 299, as stating the rule to the contrary. The language which defendant points to as indicating a more flexible approach— that a trustee ex maleficio has the burden of proving to what extent his profits were less than the maximum—must be read in the milieu of the entire opinion. The Court expressly relied on Gratz v. Claughton; then, apparently for the reason that the court below had misplaced

506

the burden of proof on the beneficiary, the general principle of law that the burden of disproving profits and proving fair dealing is on the trustee was stated and a string of opinions cited of suits dealing with trustees' accountings, but none of Section 16(b) violations, which in any event have nothing to do with intent or fair dealing of the fiduciary. The much narrower problem here under discussion was never reached by the Court, and *Stella* should not be read as upsetting the clear holding of Gratz v. Claughton—that the trustee may not reduce profits to the lowest amount by subtracting losses during the 6-month period.

■ I can see neither authority nor logic for including earned dividends in recoverable profits. The purchase and sale price of stock not dealt in ex dividend takes into account the additional value of right to declared dividends; they are included in the market price, they may not be added in again. Cf. Falco v. Donner Foundation, S.D.N.Y. 1953, CCH Fed.Sec.L.Serv. No. 90,612, reversed o.g. 2 Cir., 1953, 208 F.2d 600.

■■ Although interest is not mandatory, it has consistently been awarded in suits of this nature. Magida v. Continental Can, 2 Cir., 1956, 231 F.2d 843; Blau v. Mission Corp., 2 Cir., 1954, 212 F.2d 77; Park & Tilford v. Schulte, 2 Cir., 1947, 160 F.2d 984; contra: Smolowe v. Delendo, D.C., 46 F.Supp. 758 (no reason). In Stella, the Court of Appeals when remitting for computation of profits expressly directed that if defendant was liable interest should be awarded from the date of the sale. The fact that there was a difference in opinion as to whether defendant was an "insider" under the statute was not sufficient reason for denying interest.

Let a judgment be submitted in accordance herewith in favor of plaintiff in the sum of $20,748.36 with interest computed at 6% from date of each sale together with taxable costs and disbursements.